1  SUNNY S. HUO (State Bar No. 181071)
   ANDREW W. NOBLE (State Bar No. 245993)
2  SEVERSON & WERSON
   A Professional Corporation
3  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
4  Telephone:  (415) 398-3344
   Facsimile:  (415) 956-0439
5  ssh@severson.com
   awn@severson.com
6
   JANE K. LEE (State Bar No. 247259)
7  SEVERSON & WERSON
   A Professional Corporation
8  The Atrium
   19100 Von Karman Ave., Suite 700
9  Irvine, CA  92612
   Telephone:  (949) 442-7110
10 Facsimile:  (949) 442-7118
   jkl@severson.com
11
   Attorneys for Defendant
12 AURORA BANK FSB erroneously sued as
   AURORA LOAN SERVICING, INC. a
13 Delaware Corporation

14                  UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17 JESSICA DELANEY (f/k/a Jessica Delong), an individual, | Case No.:  CV 09 3131 BZ<br>Assigned to:<br>Magistrate Judge Bernard Zimmerman |
| 18 Plaintiffs, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF  DEFENDANT AURORA BANK FSB'S MOTION TO DISMISS** |
| 19 vs. | |
| 20 AURORA LOAN SERVICING, INC. a Delaware Corporation; GUARANTEED | Hearing Date:    November 18, 2009<br>Time:               10:00 a.m.<br>Dept.:              Courtroom G<br>Judge:             Hon. Bernard Zimmerman |
| 21 RATE, INC., a Delaware Corporation; CAPITAL MARKET FUNDING, INC., a | |
| 22 California Corporation; and DOES 1 through 50, inclusive, | |
| 23 | |
| 24 Defendants. | |
| 25 | |
| 26 | Complaint filed: July 10, 2009<br>Trial date: TBD |
| 27 | |
| 28 | |

1    Aurora Bank FSB, erroneously sued as Aurora Loan Servicing, Inc., hereby requests that

2  the Court take judicial notice of the following pursuant to Rules 201of the Federal Rules of

3  Evidence:

4    **Exhibit A:**    A true and correct copy of the Program Disclosure signed by plaintiff

5  acknowledging she that received the negative amortization feature.

6    **Exhibit B:**    A true and correct copy of the Notice of Right to Cancel signed by plaintiff

7  acknowledging that she received two completed copies of the notice of right to rescind.

8    **Exhibit C:**    A true and correct copy of the Acknowledgement of Receipt of Good Faith

9  Estimate and Truth in Lending Act Disclosures signed by plaintiff acknowledging that she has

10  received all applicable disclosures required by the Truth in Lending Act.

11    **Exhibit D:**    On April 29, 2009, a complaint was filed by the same plaintiff's counsel in

12  the Los Angeles Superior Court as Case No. VC053513 entitled *Rebecca and Manuel Moreno v.*

13  *Countrywide Home Loans, Inc. et al.* A true and correct copy of this complaint is attached.

14    **Exhibit E:**    On July 31, 2009, a complaint was filed by the same plaintiff's counsel in

15  the United States District Court Northern District as Case No. CV 09 3510 CRB entitled

16  *Christopher and Joleen Ironside vs. Aurora Loan Services et al.* A true and correct copy of this

17  complaint is attached.

18    **Exhibit F:**    On September 5, 2008, a complaint was filed by the same plaintiff's

19  counsel in the Los Angeles Superior Court as Case No. KC053781G entitled *Irma Acosta vs.*

20  *Countrywide Home Loans, et al..* A true and correct copy of this complaint is attached.

21    **Exhibit G:**    On August 8, 2009, a complaint was filed by the same plaintiff's counsel in

22  the Los Angeles Superior Court as Case No. PC043134 entitled *James and Deanna Greenspan*

23  *vs. Nationsfirst Lending, Inc. et al.* A true and correct copy of this complaint is attached.

24    It is appropriate for the Court to take judicial notice of Exhibits A through C because their

25  accuracy is not subject to reasonable dispute and plaintiff has incorporated them by reference into

26  her complaint.

27

28

11991/0007/761289.1

RJN ISO AURORA BANK'S MTD
Case No.: CV 09 3131 BZ

1    *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (on a motion to dismiss, a Court can look

2    at any document that is "incorporated by reference"); *Cooper v. Pickett*, 137 F.3d 616, 622-623

3    (9th Cir. 1997); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a document is

4    incorporated by reference where the plaintiff "refers extensively to the document or the document

5    forms the basis of plaintiff's claims"); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

6    2006).

7         It is appropriate for the Court to take judicial notice of Exhibits D through G because they

8    are not subject to reasonable dispute.  Under Rule 201, facts appropriate for judicial notice are

9    those "not subject to reasonable dispute in that it is either (1) generally known within the

10   territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

11   resort to sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  Facts

12   subject to judicial notice may be considered on a motion to dismiss.  *Mullis v. United States*

13   *Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

14        In testing a complaint's legal adequacy on a motion to dismiss, a court may consider

15   material outside of the complaint subject to judicial notice, including public records.  *See Swartz v.*

16   *KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam); *Lee v. City of Los Angeles*, 250 F.3d

17   668, 689 (9th Cir. 2001) (a court may take judicial notice of matters of public record); *Shaw v.*

18   *Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) ("In deciding whether to dismiss a claim under Fed.

19   R. Civ. P. 12(b)(6), a court may look beyond the plaintiff's complaint to matters of public record.");

20   *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The existence of the

21   complaint is matter of public record and the fact of its filing is capable of accurate and ready

22   determination.

23        More specifically, "[m]aterials from a proceeding in another tribunal are appropriate for

24   judicial notice."

25

26

27

28

-3-

RJN ISO AURORA BANK'S MTD
Case No.:  CV 09 3131 BZ

1  *Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003); *see also Lyons v. Stoval*, 188 F.3d 327,

2  333 n.3 (6th Cir. 1999) (noting that it is well-settled that federal courts may take judicial notice of

3  proceedings in other courts of record); *Harnden v. Key*, 2008 WL 5179113, at *1 (E.D. Cal. 2008)

4  ("The court may take judicial notice of court records.").

5

6  DATED:  October 2, 2009                    SEVERSON & WERSON
                                             A Professional Corporation
7

8

                                             By: /s/ Jane K. Lee
9                                                JANE K. LEE
                                             Attorneys for Defendant
10                                           AURORA BANK FSB erroneously served as
                                             AURORA LOAN SERVICES, LLC a Delaware
11                                           Limited Liability Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

11991/0007/761289.1                                            RJN ISO AURORA BANK'S MTD
                                                               Case No.:  CV 09 3131 BZ

# EXHIBIT "A"
# TO RJN



### ADJUSTABLE RATE MORTGAGE LOAN PROGRAM DISCLOSURE
### 5 YEAR FIXED PAYMENT 12-MONTH AVERAGE OF MONTHLY 1-YR CONSTANT MATURITY
### INDEX PAYMENT-CAPPED NON-CONVERTIBLE ARM

Date: JULY 11, 2006                                      Loan #: 2006087722

This disclosure describes the features of an Adjustable Rate Mortgage (ARM) program you are considering, which is called the "5 Year Fixed Payment 12 MAT Payment-Capped Non-Convertible ARM." The interest rate and payment of this loan may each change during the term of this loan. THIS LOAN ALLOWS FOR NEGATIVE AMORTIZATION. Information on other ARM programs available from the lender will be provided upon request. This disclosure is not a commitment on the part of the lender to make a loan to you.

**HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED**

- Your Interest Rate will be based on an Index Rate plus a Margin. Please ask us for our current Interest Rate and Margin.

- Your initial Interest Rate will not be equal to an Index Rate plus a Margin. If the initial Interest Rate is below the then-current Index plus Margin (the "fully-indexed rate"), then the initial Interest Rate will be a "Discounted" Interest Rate. If the initial Interest Rate is above the then-current fully-indexed Interest Rate, then the initial Interest Rate will be a "Premium" Interest Rate. Please ask us about the current Discount or Premium.

- The Index Rate is based on the twelve-month average of monthly yields on actively traded United States Securities, adjusted to a constant maturity of one year. The Index is calculated by adding together the monthly yields on Treasury securities of one-year constant maturity, as published in the Federal Reserve Board Statistical Release H.15, for the preceding 12 months available and dividing the result by twelve. If the index is no longer available, the lender will choose a new index based on comparable information. Since movement of the Index is usually related to market conditions that cannot be predicted, it is impossible to know in advance exactly how much interest you will have to pay over the life of the loan. The index rate used below was in effect on December 1, 2005.

- When your Interest Rate changes, your new Interest Rate will equal the Index Rate plus our Margin unless your lifetime Interest Rate Cap limits the amount of change in the Interest Rate.

- Your initial payment will be based on the starting interest rate on the loan, the loan amount and the term of the loan. When your payment changes, your new payment will be based on the lesser of two calculations: the payment based on the Interest Rate (calculated by adding the Index plus Margin), loan balance, and remaining loan term or the previous payment amount plus or minus 7.5% of the previous payment amount unless you have reached a re-amortization period or the maximum negative amortization amount as stated below.

**HOW YOUR INTEREST RATE CAN CHANGE**

Your Interest Rate will adjust monthly after the first payment date and will be equal to the sum of the Index value plus the Margin, subject to the following limits:

- Your Interest Rate may increase or decrease substantially over the life of the loan.

- If an Interest Rate change results in an increase in the Interest Rate, your monthly payment may not be sufficient to cover the interest due and may not fully amortize your loan.

- Your Interest Rate over the life of the loan cannot exceed an Interest Rate between 8.00 and 12.95%. Please ask us about our current maximum rate. There is no life time interest rate floor.

- Approximately 15 days before each rate adjustment date, your new Interest Rate will be determined by adding the Margin to the then current Index.

**HOW YOUR PAYMENT CAN CHANGE**

- Your payment may increase or decrease substantially over the life of the loan.

- Your payment may change on the 61st payment and then every 12 months thereafter.

- Your payment cannot be increased or decreased by more than 7.5% from the previous payment, or an amount sufficient to pay the unpaid balance in full by the maturity date at the interest rate effective for that month, whichever is less, except if your outstanding balance reaches 110% of the original loan amount or at the 1st payment adjustment and every 5th scheduled payment adjustment. This is called the Minimum Monthly Payment. If you make only the Minimum Monthly Payment, your payment may increase substantially at the 1st payment adjustment and every 5th scheduled payment or you may reach the 110% of the original loan amount at which time your payment will increase substantially.

 

- If the monthly payment is not sufficient to cover the interest due, the difference will be added to your loan amount and will accrue additional interest. This is called "Negative Amortization."

- At the 1st payment adjustment and every 5th scheduled payment adjustment, your payment calculation will only be based on the then current Interest Rate, remaining balance and remaining term of the loan. The 7.5% Payment Cap will not apply for those adjustments.

- The unpaid principal balance of your loan can never exceed 110% of the original amount borrowed. If that limit is reached, your monthly payment amount will be changed to an amount sufficient to pay off the unpaid principal balance over the remaining life of the loan at the Interest Rate then in effect.

**DEFERRED INTEREST**

Deferred interest (also known as Negative Amortization) may occur in two ways:

- Because the Interest Rate has the potential to increase each month but the payment changes are generally limited to once every twelve months, the monthly payment may be insufficient to pay the interest which is accruing; and/or

- When normal payment changes occur every twelve months, the payment is limited to an increase of 7.500% from the previous payment amount, which may be less than the interest that is accruing.

If the interest due on your loan for a month is more than the required monthly payment, the entire payment will be applied to interest and any unpaid interest will be added to the loan balance. The interest for the next month is then calculated on the new increased loan balance.

"Accelerated Amortization" may occur if the Interest Rate decreases in those months that the Interest Rate changes but the payment does not change or if the Interest Rate decreases more than the payment changes due to the 7.500% Payment Cap when the payment changes at each twelve-month interval. "Accelerated Amortization" means you may pay more per month than what is required to pay off the loan in the remaining term. Therefore, you may possibly pay the loan off earlier than the original maturity of the loan.

In addition to the Minimum Monthly Payment, you have two other options in making your payment. You may make a fully amortizing payment that is a payment that pays all the interest owed for the month plus principal or you may also choose to make a monthly "interest-only" payment. The fully amortizing payment and the interest-only payment is available only if the payment amount is greater than the Minimum Monthly Payment option. An interest-only payment amount will cover the full interest costs for that month; therefore, no additional (deferred) interest will be added to your loan balance. Your principal balance will not be increased or reduced. An interest-only payment is allowed until a fully amortizing payment is required as described above.

**FOR EXAMPLE:**

**First Example: Lifetime cap of 8.00%, 30 year term**

On a $10,000, 360-month loan with an initial Interest Rate of 2.200% in effect on December 1, 2005, the Interest Rate could rise to a maximum of 8.000%. The initial Interest Rate reflects a recent Discount of 3.526% and a Margin of 2.400% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 8.000% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 2.200%, a lifetime Interest Cap of 8.000%, a Discount of 3.526% and a Margin of 2.400%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|---|---|---|---|
| 30 years | $37.97 | $82.72 | Payment 34 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:  $100,000 ÷ $10,000 = 10
10 x $37.97 = $379.70

**Second Example: Lifetime cap of 8.00%, 40 year term**

On a $10,000, 480-month loan with an initial Interest Rate of 2.200% in effect on December 1, 2005 the Interest Rate could rise to a maximum of 8.000%. The initial Interest Rate reflects a recent Discount of 3.6260% and a Margin of 2.500% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 8.000% and remained there for the term of the loan. The example uses a $10,000 loan amount, an initial Interest Rate of 2.200%, a lifetime Interest Cap of 8.000%, a Discount of 3.6260% and a Margin of 2.500%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|---|---|---|---|
| 40 years | $31.35 | $76.99 | Payment 29 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount. For example, the initial monthly payment for a $100,000 loan would be:  $100,000 ÷ $10,000 = 10
10 x $31.35 = $313.50

IndyMac 5 Year Fixed Payment 12 MAT ARM Disclosure

8480723 (0603)

Prime #3008
(3/2006)

D3006.frm



**Third Example:  Lifetime cap of 12.95%, 30 year term**

On a $10,000, 360-month loan with an initial Interest Rate of 2.200% in effect on  December 1, 2005, the Interest Rate could rise to a maximum of 12.950%.  The initial Interest Rate reflects a recent Discount of 3.4260% and a Margin of 2.300% (your initial Interest Rate, Discount or Premium and Margin may be different).  The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 12.950% and remained there for the term of the loan.  The example uses a $10,000 loan amount, an initial Interest Rate of 2.200%, a lifetime Interest Cap of 12.950%, a Discount of 3.4260% and a Margin of 2.300%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|---|---|---|---|
| 30 years | $37.97 | $121.10 | Payment 15 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount.  For example, the initial monthly payment for a $100,000 loan would be:    $100,000 ÷ $10,000 = 10
             10 x $37.97 = $379.70

**Fourth Example:  Lifetime cap of 12.95%, 40 year term**

On a $10,000, 480-month loan with an initial Interest Rate of 2.200% in effect on  December 1, 2005, the Interest Rate could rise to a maximum of 12.950%.  The initial Interest Rate reflects a recent Discount of 4.213% and a Margin of 2.300% (your initial Interest Rate, Discount or Premium and Margin may be different). The following worse case example illustrates what would happen to your payments if the Interest Rate increased at the first adjustment to the maximum lifetime Interest Cap of 12.950% and remained there for the term of the loan.  The example uses a $10,000 loan amount, an initial Interest Rate of 1.250%, a lifetime Interest Cap of 12.950%, a Discount of 4.213% and a Margin of 2.300%.

| Loan Term | Initial Payment | Maximum Payment | Month in which Maximum Payment is reached |
|---|---|---|---|
| 40 years | $31.35 | $119.05 | Payment 14 |

To see what your payments (excluding impounds or escrow payments for taxes, insurance and other purposes relating to the security property) would have been during that period, divide your mortgage amount by $10,000; then multiply the loan payment by the amount.  For example, the initial monthly payment for a $100,000 loan would be:    $100,000 ÷ $10,000 = 10
             10 x $31.35 = $313.50

**NOTICE OF CHANGE**

You will be notified in writing at least 25, but no more than 120, days before the due date of the first payment that will be at the new level. This notice will contain information about the current and prior Index values on which your current and prior interest rates are based, your current and prior interest rates, new payment amount and loan balance.

**ASSUMPTION OF LOAN**

Although the loan contains a due-on-sale clause, the Lender will consent to a transfer of the property, provided the transferee meets Lender's current loan underwriting criteria.  The transferee will be required to execute a written assumption agreement and pay Lender an assumption fee in an amount not to exceed the amount Lender requires for other similar transactions.  All original terms will remain the same.

**PREPAYMENT FEE**

Depending upon the interest rate and terms of your loan, your loan may have a prepayment fee.  A prepayment fee is a charge that may be incurred for paying off your loan during the first three years or less of your loan term.  Please ask us if your loan has a prepayment fee.

I/We acknowledge receipt and have read the Adjustable Rate Mortgage Program Disclosure and the Consumer Handbook on Adjustable Rate Mortgages.

Borrower _Jessica H. DeLong_ 3-16-06   Borrower _____
        JESSICA H. DELONG   Date                   Date

Borrower _____ Date   Borrower _____ Date

Borrower _____ Date   Borrower _____ Date

# EXHIBIT "B"
# TO RJN



# NOTICE OF RIGHT TO CANCEL

Loan Number: 2006087722

Borrowers: JESSICA H. DELONG

Property Address: 3900 SANTA RITA STREET, OAKLAND, CALIFORNIA 94601

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is JULY 15, 2006       ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
GUARANTEED RATE, INC.
3940 N RAVENSWOOD
CHICAGO, ILLINOIS 60613

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of JULY 19, 2006 (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____          _____
Consumer's Signature                        Date
JESSICA H. DELONG

**ACKNOWLEDGMENT OF RECEIPT**

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

_____          7-15-06
JESSICA H. DELONG                           Date

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)
03/17/06

DocMagic eForms 800-649-1362
www.docmagic.com

Note.rnsc

# EXHIBIT "C"
# TO RJN

 

Loan Number: 2006087722

# ACKNOWLEDGMENT OF RECEIPT OF GOOD FAITH ESTIMATE AND TRUTH IN LENDING ACT DISCLOSURES

Lender: GUARANTEED RATE, INC.

Borrower(s): JESSICA H. DELONG

Property Address: 3900 SANTA RITA STREET, OAKLAND, CALIFORNIA 94601

The undersigned ("you" or "your") hereby acknowledge receipt of a "good faith estimate" of the charges which you are likely to incur at the settlement of your loan as provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (12 U.S.C.A. 2601 et seq.), and all applicable disclosures required by the Truth in Lending Act, as amended (15 U.S.C.A. 1601 et seq.).

| | | |
|---|---|---|
| Borrower JESSICA H. DELONG  7-15-06 | Date | Borrower _____  Date |
| Borrower _____ | Date | Borrower _____  Date |
| Borrower _____ | Date | Borrower _____  Date |

CALIFORNIA ACKNOWLEDGMENT OF RECEIPT
12/01/01

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Csar.msc

# EXHIBIT "D"
# TO RJN

Stephen P. Collette (SB# 186439)
John Haubrich, Jr. (SB# 228341)
STEPHEN P. COLLETTE & ASSOCIATES
811 Wilshire Blvd., Suite 1200
Los Angeles, CA 90017
Telephone: (213) 542-8272
Facsimile: (562) 684-4531

```
ORIGINAL FILED
APR 2 9 2009
NORWALK
SUPERIOR COURT
```

Attorneys for Plaintiff REBECCA MORENO

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| REBECCA MORENO, an individual, MANUEL MORENO, an individual, | CASE NO.: VC053513 |
| | **COMPLAINT FOR:** |
| Plaintiff, | **(1) UNLAWFUL AND UNFAIR BUSINESS PRACTICES [CAL BUS. AND PROF. CODE §17200];** |
| vs. | |
| COUNTRYWIDE HOME LOANS, INC., a New York Corporation; EXECUTIVE WORLD CORP., a California Corporation d/b/a EXECUTIVE MORTGAGE GROUP and DOES 1 through 50, inclusive, | **(2) FINANCIAL ELDER ABUSE [CAL WELF. AND INST. Code § 15610.30(a)].** |
| Defendants. | |

Plaintiff REBECCA and MANUEL MORENO alleges as follows:

I.    **PARTIES**

    1.  Plaintiff REBECCA MORENO (hereinafter "Plaintiff" and/or "Ms. Moreno") is, and at all times relevant hereto was, an individual residing in Riverside County in the State of California.

    2.  Plaintiff MANUEL MORENO (hereinafter "Mr. Moreno") is, and at all times relevant hereto was, an individual residing in Riverside County in the State of California.

1

3.   Plaintiff is informed and believes, and on that basis alleges, that Defendant COUNTRYWIDE HOME LOANS, INC., (hereinafter "Countrywide") is, and at all times relevant hereto was, a Corporation organized and existing under the laws of the State of New York and licensed to do business in the State of California.

4.   Plaintiff is informed and believes, and on that basis alleges, that Defendant EXECUTIVE WORLD CORP. (hereinafter "Executive World") is, and at all times relevant hereto was, a Corporation organized and existing under the laws of the State of California, currently doing business as Executive Mortgage Group.

5.   Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1-50, inclusive, and therefore sue these defendants by these fictitious names.  Plaintiff will amend this Complaint to state the true names and capacities of these Doe defendants once ascertained.  Plaintiff is informed and believes, and on that basis allege, that each of the fictitiously named defendants is in some manner responsible for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by said Doe defendants' conduct.

## II.   BACKGROUND FACTS

6.   On April 4, 2006, Rebecca Moreno entered into a closed-end consumer credit transaction wherein she refinanced the loan on her principal residence located at 14626 Figueras Road, La Mirada, CA 90638 with Defendant Executive Mortgage.  Plaintiff Manuel Moreno, Ms. Moreno's wife, had a community property interest in the property and was on title prior to the transaction.

7.   The First Trust Deed in the amount of $260,000 provides for an initial interest rate of 1.5% per annum. However, this "teaser" rate exists for only the first month of the loan.  After one month, the interest rate begins to be calculated by adding 3.250% to the current index which will adjust every 12th month thereafter.  This sudden increase in the interest rate goes unnoticed because the minimum monthly payment of $720.65 continues to be calculated at the initial teaser

2

1  rate of 1.5% and all unpaid interest is added to the principal amount of the loan. For this reason,

2  most consumers are unaware or do not fully understand the impact of the interest rate change.

3  Ms. Moreno is a victim of this misleading business practice. Attached hereto as Exhibit "A" is a

4  true and correct copy of the Adjustable Rate Note.

5      8.  Other misleading business practices were used in the origination of Plaintiffs' loan.

6  The first page of the adjustable rate note indicates that the Ms. Moreno's lender on the

7  transaction is Defendant Executive Mortgage Group with a CFL License number of 01243529.

8  However, per the California Department of Corporations, Executive Mortgage Group's license

9  number is 4130416.  Therefore, the license numbers listed on the Adjustable Rate Note, Deed of

10  Trust and Riders to the Deed of Trust are incorrect.  In addition, the payment letter given to the

11  borrower is designed to mislead the borrower into believing they will have a low monthly

12  payment for the life of the loan.  A true and correct copy of the Payment Letter to the Borrower

13  is attached hereto as Exhibit "B." According to the payment letter, Plaintiffs would have

14  monthly payments of $975.96 from June 1, 2006 to May 1, 2046.  Obviously, based on the

15  nature of the loan, this payment letter is inaccurate and designed to deceive Plaintiffs regarding

16  the true terms of the loan.

17      9.  A Prepayment Penalty was also a condition of the loan.  By this pre-payment penalty,

18  Plaintiffs were subject to a penalty of 20% of the original principal amount of the note should

19  she attempt to refinance out of the loan.  Therefore, Plaintiffs were unable to extricate

20  themselves from this loan without paying a costly price.

21      10. Moreover, unscrupulous tactics were used to ensure that the Mr. and Ms. Moreno

22  obtained the loan on the property.  When initially applying for the loan, Mr. and Mrs. Moreno

23  applied together.  However, Mr. Moreno did not qualify for the loan.  However, to ensure Ms.

24  Moreno obtained the loan, deeds were prepared for Mr. Moreno wherein he quitclaimed the

25  property to his wife alone and then immediately the property was quitclaimed back to him and

1   his wife as joint tenants.  Mr. Moreno was 69 at the time his property was encumbered with the

2   loan.

3          11. There exists significant Truth in Lending violations arising from the above-referenced

4   loan. The Notice of Right to Cancel provided to Mr. Moreno shows a transaction date of April 4,

5   2006.  However, the last date upon which Ms. Moreno could cancel the transaction is not

6   specified on the disclosure in violation of the Truth in Lending Act and Regulation Z. Attached

7   hereto as Exhibit "C" is a true and correct copy of the defective Notice of Right to Cancel.

8   Moreover, Ms. Moreno was married as of the date of the transaction and her husband, Manuel

9   Moreno, was not given two copies of a properly executed Notice of Right to Cancel as required

10  for anyone holding an ownership interest in the property.

11         12. Under the Truth In Lending Act, loans of this nature must conspicuously disclose

12  Negative Amortization features in the Truth In Lending Act Disclosure Statement.  The

13  Statement provided to Plaintiff reveals that the loan contains a variable rate feature, but makes no

14  mention of the fact that the loan will Negatively Amortize.  Attached hereto as Exhibit "D" is a

15  true and correct copy of the Truth In Lending Disclosure Statement. In addition, other

16  disclosures in the loan documentation make it unclear that Negative Amortization will occur.

17  Further, the Note only indicates that the Interest Rate *has the possibility* of increasing from the

18  Teaser Rate, when in fact it is assured that this rate will increase.  By inserting uncertainty into

19  the language and disclosures of the loan, it was all but guaranteed that Rebecca Moreno would

20  not understand the mechanics of the rate increases nor the fact that his principal balance would

21  increase.  Mortgage loans with Negative Amortization or Pay Option Arm features are designed

22  to allow lenders and mortgage brokers to deceive consumers and often results in consumers

23  being placed in loans they cannot afford.

24         13. Defendant Executive Mortgage Group originated Plaintiffs' loan with full knowledge

25  that the loan was a Negative Amortization loan, the type of loan Plaintiffs could not afford and

COMPLAINT FOR UNFAIR BUSINESS PRACTICES AND ELDERLY ABUSE

Defendant Countrywide Home Loans, Inc. purchased the loan with the above-referenced disclosure violations apparent on the face of the documentation.

14. Plaintiffs now bring this action to address the misleading and unfair business practices of Defendants.

## III.    CLAIMS

### FIRST CAUSE OF ACTION

### (Unlawful And Unfair Business Practices In Violation Of

### Cal Bus. And Prof. Code § 17200 – By Plaintiff Against All Defendants)

15.  Plaintiffs reallege and incorporate each allegation of paragraphs 1 through 15 above, as though fully set forth herein.

16.  Defendant Executive World advertised its loans as low interest loans with the intent to mislead Plaintiffs and other consumers.  Defendant Countrywide was aware that the loans which they were purchasing contained a misleading clause designed to mislead Plaintiffs and other consumers, and that Defendant Executive World was misleading such consumers.

17. As noted above, Defendant Executive World failed to provide two correct and complete copies of the Notice of Right to Cancel in violation of 15 U.S.C. § 1635(a) and Regulation Z § 226.23(b). These violations were apparent on the face of the documentation and Defendant Countrywide purchased the loan with full knowledge of the violations.

18. Therefore, by the fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendants have violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of money and/or property.

19.  Plaintiffs has suffered injury and damages and has lost income and/or property as a result of Defendants' unfair and unlawful practices in violation of California Business & Professions Code § 17200.

20. As a proximate result of Defendants' violation of the aforementioned statute, an injunction prohibiting Defendants from engaging in the unlawful business practices described above. In addition, Plaintiff seeks an order for disgorgement/restitution of all funds unlawfully obtained or that will be unlawfully obtained from Plaintiff over the life of the loan as a result of this misleading business practice.

SECOND CAUSE OF ACTION

(Financial Elder Abuse In Violation Of

Cal Welf. And Inst. Code § 15610.30(a) –

By Plaintiff Manuel Moreno Against All Defendants)

21. Plaintiff realleges and incorporates each allegation of paragraphs 1 through 21 above, as though fully set forth herein.

22. Defendants, with knowledge that Plaintiff Manuel Moreno is an elder, acquired Plaintiff's trust and convinced him to enter into a unfavorable loan. Defendants represented to Plaintiff that he would be provided with a refinanced loan that would reduce his payments. Instead, Defendants provided Mr. Moreno with a negatively amortizing loan which would increase his principal balance and failed to provide him with the required disclosures. Defendant Countrywide purchase the loan at issue with these deficienes readily apparent from the face of the loan documentation

23. As a further proximate result of the acts of Defendants, Plaintiff was hurt and injured in his health, strength and activity, sustaining injury to his nervous system and person, all of which injuries have caused and continue to case Plaintiff great mental, physical and nervous pain and suffering. As a result of the injuries, Plaintiff has endured pain and suffering in an amount to be proven at trial.

24. The above described conduct of Defendants was willful and intended to cause injury to Plaintiff. Plaintiff is, therefore, entitled to award of punitive damages in an amount to be proven at trial.

6

25. Plaintiff is also entitled to received reasonable attorney's fees, pursuant to Welf. & Inst. Code § 15657.

## IV.   PRAYER FOR RELIEF

1.      For general, special and punitive damages;

2.      For injunctive relief to stop the unlawful business practice described above;

3.      For disgorgement/restitution of all monies unlawfully obtained from Plaintiffs pursuant to Cal. Bus & Prof Code §17203;

4.      For attorneys fees' pursuant to Welf. & Inst. Code § 15657.

5.      For costs of suit herein incurred; and,

6.      For such other and further relief as the Court may deem proper.


Respectfully submitted,

DATED:  April 21, 2009.                 STEPHEN P. COLLETTE & ASSOCIATES


By: _____
        STEPHEN P. COLLETTE
        JOHN HAUBRICH, JR.
        Attorneys for Plaintiff REBECCA
        MORENO and MANUEL MORENO

7

COMPLAINT FOR UNFAIR BUSINESS PRACTICES AND ELDERLY ABUSE

# EXHIBIT "A"

MIN: 1001715-0118966597-7                    Loan Number: 0118966597

## ADJUSTABLE RATE NOTE
### (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

APRIL 4, 2006                MONTEBELLO              CALIFORNIA
     [Date]                     [City]                  [State]

14626 FIGUERAS ROAD, LA MIRADA, CALIFORNIA 90638
[Property Address]

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $260,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed (ONE HUNDRED FIFTEEN PERCENT     ) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is EXECUTIVE MORTGAGE GROUP, A CALIFORNIA CORPORATION (CFL # 01243529)
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

**(A)  Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  1.500 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)  Interest Rate Change Dates**

The interest rate I will pay may change on the          1st       day of JUNE, 2006                 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 250/1000     percentage point(s)  3.250 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than  9.950  %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

### 3.   PAYMENTS

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the          1st       day of each month beginning on JUNE 1, 2006   . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2046          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1818 WEST BEVERLY BOULEVARD, SUITE 103, MONTEBELLO, CALIFORNIA 90640
or at a different place if required by the Note Holder.

Borrower Initials: _____   _____   _____   _____
PayOption ARM Note - MTA Index
FE-5312 (0511)                     Page 1 of 4

**(B)  Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $720.65   unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the  1st   day of  JUNE, 2007   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to  115.000  percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**
On the  5th   Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:
(i)   **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
(ii)  **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

Borrower Initials: ___  ___  ___  ___  ___
PayOption ARM Note - MTA Index
FE-5312 (0511)                    Page 2 of 4

4.   NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

Borrower Initials: _____  _____  _____  _____  _____

PayOption ARM Note - MTA Index
FE-5312 (05:11)                              Page 3 of 4

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_____ (Seal)
REBECA  MORENO                                -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

# EXHIBIT "B"

# PAYMENT LETTER TO BORROWER

FROM:     EXECUTIVE MORTGAGE GROUP
          1818 WEST BEVERLY BOULEVARD, SUITE 103
          MONTEBELLO, CALIFORNIA 90640

RE:       Loan No: 0118966597
          Property Address:   14626 FIGUERAS ROAD, LA MIRADA, CALIFORNIA 90638

TO:       REBECA MORENO
          14626 FIGUERAS ROAD
          LA MIRADA, CALIFORNIA 90638

Dear Borrower:

The monthly payments on the above referred to loan are to begin on     JUNE 1, 2006      , and will continue monthly until MAY 1, 2046   .

Your monthly payment will consist of the following:

|                               |     |         |
|-------------------------------|-----|---------|
| PRINCIPAL AND INTEREST        | $   | 720.65  |
| MMI/PMI INSURANCE             |     |         |
| RESERVE FOR TAXES             |     | 197.06  |
| RESERVE FOR INSURANCE         |     | 58.25   |
| RESERVE FOR FLOOD INSURANCE   |     |         |
|                               |     |         |
|                               |     |         |
| **TOTAL MONTHLY PAYMENTS**    | $   | 975.96  |

You are to make your payments to:

          EXECUTIVE MORTGAGE GROUP
          1818 WEST BEVERLY BOULEVARD, SUITE 103
          MONTEBELLO, CALIFORNIA 90640

Any correspondence, or calls, in reference to your loan, please refer to the above loan number.

Copy received and acknowledged.


Date: _____        _____
                                               REBECA MORENO

                                              _____

                                              _____

                                              _____

                                              _____

                                              _____

---

PAYMENT LETTER TO BORROWER                                      DocMagic eForms  800-649-1362
                                                               www.docmagic.com

# EXHIBIT "C"

# NOTICE OF RIGHT TO CANCEL

Loan Number: 0118966597

Borrowers: REBECA MORENO

Property Address: 14626 FIGUERAS ROAD, LA MIRADA, CALIFORNIA 90638

---

**YOUR RIGHT TO CANCEL**

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is   APRIL 4, 2006          ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
EXECUTIVE MORTGAGE GROUP
1818 WEST BEVERLY BOULEVARD, SUITE 103
MONTEBELLO, CALIFORNIA 90640

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**


_____          _____
Consumer's Signature                        Date
REBECA MORENO

---

**ACKNOWLEDGMENT OF RECEIPT**

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.



_____          _____
REBECA MORENO                               Date

---

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8
(REFINANCING WITH ORIGINAL CREDITOR)
05/06/05

DocMagic *Premium* 800-649-1362
www.docmagic.com

# EXHIBIT "D"

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 0118966597
Creditor: EXECUTIVE MORTGAGE GROUP (DRE # 01243529)          Date: APRIL 4, 2006
Address: 1818 WEST BEVERLY BOULEVARD, SUITE 103, MONTEBELLO, CALIFORNIA 90640

Borrower(s): REBECA MORENO

Address: 14626 FIGUERAS ROAD, LA MIRADA, CALIFORNIA 90638

Lines containing an "x" are applicable.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down payment of $ |
|---|---|---|---|---|
| 7.456 % | $629,760.62 | $251,881.10 | $801,641.72 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | | | | Monthly Beginning |
| 1 | 720.65 | 06/01/06 | | | | | | |
| 11 | 720.65 | 07/01/06 | | | | | | |
| 12 | 774.70 | 06/01/07 | | | | | | |
| 12 | 832.80 | 06/01/08 | | | | | | |
| 9 | 895.26 | 06/01/09 | | | | | | |
| 434 | 1,944.03 | 03/01/10 | | | | | | |
| 1 | 1,937.56 | 05/01/46 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

_X_ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability   _X_ Property Insurance   _____ Flood Insurance   _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 14626 FIGUERAS ROAD, LA MIRADA, CALIFORNIA 90638
_____ The goods or property being purchased   _X_ Real property you already own.
FILING FEES: $125.00
LATE CHARGE: If payment is more than _____ 15 _____ days late, you will be charged _____ 5.000 _% of the payment. * or $5.00 (whichever is greater)
PREPAYMENT: If you pay off early, you
_X_ may          _____ will not      leave to pay a penalty.
_____ may      _X_ will not      be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may          _____ may, subject to conditions   _X_ may not      assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
_X_ "e" means an estimate          all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant REBECA MORENO | Date | Applicant | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

DocMagic ©2006 1-800-649-1362
www.docmagic.com

# EXHIBIT "E"
# TO RJN

**E-filing**

1  Tiffany L. Gray (SB# 253004)
2  STEPHEN P. COLLETTE & ASSOCIATES
   811 Wilshire Blvd., Suite 1200
3  Los Angeles, CA 90017
   Telephone: (213) 542-8272
4  Facsimile: (562) 684-4531
5
   Attorneys for Plaintiffs CHRISTOPHER IRONSIDE and JOLEEN IRONSIDE
6
7
8              IN THE UNITED STATES DISTRICT COURT
9          FOR THE NORTHERN DISTRICT OF CALIFORNIA            **CRB**
10
   CHRISTOPHER IRONSIDE, an          )    CASE NO.:
11 individual; and JOLEEN IRONSIDE, an )
   individual;                        )    **CV   09   03510**
12                                     )
                                       )
13           Plaintiffs,               )    **(1) RESCISSION PURSUANT**
                                       )    **TO THE FEDERAL TRUTH IN**
14       vs.                           )    **LENDING ACT [15 U.S.C. §**
                                       )    **1601 AND REGULATION Z, 12**
15 AURORA LOAN SERVICES, LLC, a        )    **C.F.R. §226]; AND,**
16 Delaware Limited Liability Company; )
   HOMECOMINGS FINANCIAL              )
17 NETWORK, INC., a Delaware           )    **(2) UNLAWFUL AND UNFAIR**
   Corporation; CALIFORNIA            )    **BUSINESS PRACTICES [CAL**
18 MORTGAGE FUND, INC., a California   )    **BUS. AND PROF. CODE**
19 Corporation and DOES 1 through 50,  )    **§17200].**
   inclusive,                         )
20                                     )
21           Defendants.               )
22                                     )
23
24
      Plaintiffs CHRISTOPHER IRONSIDE and JOLEEN IRONSIDE
25
   (hereinafter collectively "Plaintiffs") allege as follows:

                                   1
   **COMPLAINT FOR RECISSION AND UNFAIR BUSINESS PRACTICES.**

## I.   JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because Plaintiffs' claims under the Truth in Lending Act arise under federal law.  Plaintiffs seek rescission of their mortgage pursuant to 15 U.S.C. § 1635 and related relief pursuant to 15 U.S.C. § 1640. This Court has supplemental jurisdiction over Plaintiffs' claims under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district and Plaintiffs' claims arose here.

## II.  PARTIES

3.  Plaintiff CHRISTOPHER IRONSIDE (hereinafter "Plaintiff" and/or "Mr. Ironside") is, and at all times relevant hereto was, an individual residing in Contra Costa County in the State of California.

4.  Plaintiff JOLEEN IRONSIDE (hereinafter "Plaintiff" and/or "Mrs. Ironside") is, and at all times relevant hereto was, an individual residing in Contra Costa County in the State of California.

5.  Plaintiffs are informed and believe, and on that basis allege, that Defendant AURORA LOAN SERVICES, LLC. (hereinafter "AURORA") is, and at all times relevant hereto was, a Limited Liability Company organized and existing under the laws of the State of Delaware and licensed to do business in the State of California.

6.  Plaintiffs are informed and believe, and on that basis allege, that Defendant HOMECOMINGS FINANCIAL NETWORK, INC. (hereinafter "Homecomings") is, and at all times relevant hereto was, a Corporation organized

COMPLAINT FOR RECISSION AND UNFAIR BUSINESS PRACTICES.

and existing under the laws of the State of Delaware and licensed to do business in the State of California.

7. Defendant Plaintiffs are informed and believe, and on that basis allege, that Defendant CALIFORNIA MORTGAGE FUND, INC. (hereinafter "CMF") is, and at all times relevant hereto was, a Corporation organized and existing under the laws of the State of California.

8. Plaintiffs are ignorant of the true names and capacities of the defendants sued herein as Does 1-50, inclusive, and therefore sue these defendants by these fictitious names. Plaintiffs will amend this Complaint to state the true names and capacities of these Doe defendants once ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named defendants is in some manner responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by said Doe defendants' conduct.

III.   **BACKGROUND FACTS**

9. On August 1, 2006, Christopher and Joleen Ironside entered into a closed-end consumer credit transaction wherein they refinanced the loan on their principal residence located at 4764 Carnegie Lane, Brentwood, CA 94513 with Defendant Homecomings. This transaction was brokered by Defendant CMF.

10. The First Trust Deed in the amount of $472,000 provides for an initial interest rate of 1.5% per annum. However, this rate exists for only one month. After one month, the interest rate begins to be calculated by adding 3.325% to the current index which will adjust every single month thereafter. The sudden change in the interest rate goes unnoticed because the minimum monthly payment of $1,628.97 continues to be calculated at the teaser interest rate of 1.5% and all

3

unpaid interest is added to the principal amount of the loan. For this reason, most consumers are unaware or do not fully understand the impact of the interest rate change. Mr. and Mrs. Ironside are victims of this misleading business practice.

11. Other misleading business practices were used to coerce Plaintiffs into this loan. Mr. and Mrs. Ironside were initially interested in refinancing their property in order to pay medical bills for their sick children and lower their monthly payments. Plaintiffs responded to an mailed advertisement and came in contact with an agent of Defendant CMF. The agent proposed they enter into a Pay Option ARM loan. She explained that this type of loan was ideal for Plaintiffs because each month they could choose the payment they were most comfortable with making. Plaintiffs made it clear that they would not be able to make more than the minimum payment Defendant CMF had quoted them. Defendant CMF did not discuss the concept of negative amortization with Plaintiffs and assured them that they could make the minimum payment without penalty. Plaintiffs were confused and alarmed when they received their first mortgage statement and discovered that by making the minimum payment, interest was deferred and the principal balance had increased. Negatively Amortized loans put borrowers at a higher risk of default as negative equity is generated through minimum payments. For this reason, most consumers are unaware or do not fully understand the impact of the loan terms in a negatively amortized loan. Mr. and Mrs. Ironside are victims of this misleading business practice.

12. There exists significant Truth in Lending violations arising from the above-referenced loan. Under the Truth In Lending Act, loans of this nature must conspicuously disclose Negative Amortization features in the Truth In Lending Act Disclosure Statement. The Statement provided to Plaintiffs reveals that the loan

4

contains a variable rate feature, but makes no mention of the fact that the loan will Negatively Amortize. Attached hereto as Exhibit "A" is a true and correct copy of the Truth In Lending Disclosure Statement. In addition, other disclosures in the loan documentation make it unclear that Negative Amortization will occur. For example, the Note only indicates that the Interest Rate has the possibility of increasing from the Teaser Rate, when in fact it is assured that this rate will increase. By inserting uncertainty into the language and disclosures of the loan, it was all but guaranteed that Mr. and Mrs. Ironside would not understand the mechanics of the rate increases nor the fact that his principal balance would increase. Mortgage loans with Negative Amortization or Pay Option Arm features are designed to allow lenders and mortgage brokers to deceive consumers and often results in consumers being placed in loans they cannot afford.

13. Further, the loan includes a pre-payment charge clause that prevents payment on the account for 3 years without a penalty of 6-months advanced interest on the amount of the pre-payment that exceeds 20% of the original principal amount. As the initial interest rate only existed for the first month of the loan, this clause effectively precluded refinancing the loan with more favorable terms. This clause locked Plaintiff into a loan with harsh and adverse conditions.

14. Defendant Homecomings originated Plaintiffs' loan and Defendant Aurora purchased and serviced said loan with the above-referenced disclosure violations apparent on the face of the documentation and with full knowledge that the loan was a Negative Amortization loan, the type of loan Mr. and Mrs. Ironside could not afford when the loan goes into "recast."

15. On July 30, 2009, Mr. and Mrs. Ironside, by and through their counsel, rescinded the transaction by sending a letter to Defendant Aurora, U.S. Mail, postage prepaid, certified mail, informing it of their election to rescind the loan. A true and correct copy of the rescission letter is attached hereto as Exhibit "B".

16. Plaintiffs now bring this action to rescind this loan pursuant to their rights under the Federal Truth in Lending Act and to address the misleading and unfair business practices of Defendants.

## III.   CLAIMS

### FIRST CAUSE OF ACTION

### (Rescission – By Plaintiffs Against All Defendants)

17. Plaintiffs reallege and incorporate each allegation of paragraphs 1 through 16 above, as though fully set forth herein.

18. This consumer credit transaction was subject to the Plaintiff's right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23).

19. Defendant Homecomings violated 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.19(b) by placing Plaintiffs in a Negatively Amortized loan knowing it was unclear that the loan had a negatively amortizing feature. If a loan's annual percentage rate has the possibility of increasing from it's initial rate and the loan is for a term of more than one year, then the Truth In Lending Disclosure Statement must include specific explanations of changes in outstanding balance and negative amortization. 12 C.F.R. § 226.19(b), and *Federal Reserve Board Official Staff Commentary*, [Regulation Z; Docket No. R-0863] Monday, April 3, 1995. In other words, the loan documentation for a negatively amortized loan must disclose this feature and the fact that if the borrower makes only the minimum payment that

unpaid interest will be added to the balance. Under the Truth In Lending Act, loans of this nature must conspicuously disclose Negative Amortization features in the Truth In Lending Act Disclosure Statement. The Statement provided to Plaintiffs reveals that the loan contains a variable rate feature, but makes no mention of the fact that the loan will Negatively Amortize.  Therefore, in violation of the Truth in Lending Act, 12 C.F.R. § 226.19(b), Defendant Homecomings put Plaintiffs in a loan on their principal dwelling for a term of 30 years where the annual percentage rate was guaranteed to increase and failed to adequately disclose its negative amortization feature and the fact that there could be changes to the outstanding balance. Defendant Aurora purchased and serviced the loan with full knowledge of the violations and with the violations apparent on the face of the documentation.

20. By reason of the aforesaid violations of the Truth in Lending Act and Regulation Z, Plaintiffs are entitled to rescind the consumer credit transaction and receive a tender of amounts paid pursuant to the consumer credit transactions as damages. Pursuant to 15 U.S.C 1635(b) and Reg. Z §§226.15(d)(3), after Defendant Aurora has tendered its proceeds and taken action to reflect that its interest in the security has been eliminated, Plaintiffs will tender their proceeds (and have the ability to do so) given to them by Defendant Aurora in accordance with applicable statutes and case law.

## SECOND CAUSE OF ACTION

### (Unlawful And Unfair Business Practices In Violation Of Cal Bus. And Prof. Code § 17200 – By Plaintiffs Against All Defendants)

21. Plaintiffs reallege and incorporate each allegation of paragraphs 1 through 20 above, as though fully set forth herein.

7

22. Defendant Homecomings advertised its loans as low interest loans with the intent to mislead Mr. and Mrs. Ironside and other consumers. Defendant Aurora was aware that the loans which they were purchasing and servicing contained a misleading clause designed to mislead Mr. and Mrs. Ironside and other consumers, and that Defendant Homecomings was misleading such consumers.

23. As noted above, Defendant Homecomings and Defendant CMF placed Plaintiffs in a Negatively Amortized loan knowing that it was unclear that loan had a negatively amortizing feature. This was a clear violation of the Truth In Lending Act which requires the Truth In Lending Disclosure Statement to plainly disclose that a loan may negatively amortize. (12 C.F.R. § 226.19).

24. These violations were apparent on the face of the documentation and Defendant Aurora purchased and serviced the loan with full knowledge of the violations.

25. Therefore, by the fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendants have violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of money and/or property.

26. Plaintiffs have suffered injury and damages and has lost income and/or property as a result of Defendants' unfair and unlawful practices in violation of California Business & Professions Code § 17200.

27. As a proximate result of Defendants' violations of the aforementioned statutes, an injunction prohibiting Defendants from engaging in the unlawful business practices described above. In addition, Plaintiffs seek an order for

COMPLAINT FOR RECISSION AND UNFAIR BUSINESS PRACTICES.

disgorgement/restitution of all funds unlawfully obtained or that will be unlawfully obtained from Plaintiffs over the life of the loan as a result of this misleading business practice.

## IV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them (to the extent applicable), as follows:

1.   For rescission of the consumer credit transaction;

2.   For injunctive relief to stop the unlawful business practice described above;

3.   For disgorgement/restitution of all monies unlawfully obtained from Plaintiff pursuant to Cal. Bus & Prof Code §17203;

4.   For attorney's fees pursuant to the 15 U.S.C. § 1640; or as allowed by law and/or contract;

5.   For statutory damages based on Defendants' failure to respond properly to Plaintiff's recession notice;

6.   For costs of suit herein incurred; and,

7.   For such other and further relief as the Court may deem proper.


Respectfully submitted,

DATED:  July 30, 2009.           STEPHEN P. COLLETTE & ASSOCIATES


By: _____
     TIFFANY L. GRAY
     Attorneys for Plaintiffs
     CHRISTOPHER and JOLEEN
     IRONSIDE

# EXHIBIT "A"

Borrower:                                   Creditor:
CHRISTOPHER IRONSIDE                         HOMECOMINGS FINANCIAL NETWORK, INC.
4764 CARNEGIE LANE                           4350 VON KARMAN AVENUE, #100
BRENTWOOD, CA 94513                          NEWPORT BEACH, CA  92660

Loan Number:  047-013706-8                   Date:  08/01/2006

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of payments |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 7.7625% | $878,305.16 | $468,899.46 | $1,347,204.62 |

Your payment schedule will be:

| No. of Pmts | Amt. of Pmts | Monthly Pmts Begin | No. of Pmts | Amt. of Pmts | Monthly Pmts Begin | No. of Pmts | Amt. of Pmts | Monthly Pmts Begin |
|---|---|---|---|---|---|---|---|---|
| 12 | 1628.97 | 10/01/2006 | | | | | | |
| 12 | 1751.14 | 10/01/2007 | | | | | | |
| 12 | 1882.48 | 10/01/2008 | | | | | | |
| 12 | 2023.67 | 10/01/2009 | | | | | | |
| 3 | 2175.45 | 10/01/2010 | | | | | | |
| 308 | 4055.63 | 01/01/2011 | | | | | | |
| 1 | 4053.67 | 09/01/2036 | | | | | | |

VARIABLE RATE:  Your loan contains a variable-rate feature.  Disclosures about the
variable-rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:   * Property
You may obtain the insurance from anyone that is acceptable to creditor.

SECURITY:  You are giving a security interest in real property you already own.
Property Address: 4764 CARNEGIE LANE, BRENTWOOD, CA  94513

LATE CHARGE:  If a payment is more than 15 days late, you will be charged 5 % of the
overdue payment of principal and interest.

PREPAYMENT:  If you pay off your loan early,  * You may have to pay a penalty.
 * You will not be entitled to a refund of part of the finance charge.

ASSUMPTION:  Someone buying your property may assume the remainder of your loan on the
original terms.

See your contract documents for any additional information about nonpayment, default, any
required repayment in full before the scheduled date, and prepayment refunds and penalties.

----------------------------------------------------------------
CHRISTOPHER IRONSIDE              DATE        JOLEEN IRONSIDE              DATE


4/1/08
April 15th, 2008


5 mon
7 months

# EXHIBIT "B"

# STEPHEN P. COLLETTE & ASSOCIATES
### LAW FIRM

July 30, 2009

**CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**

Aurora Loan Servicing
10350 Park Meadows Drive
Littleton, CO 80124

**CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**

Aurora Loan Servicing
2617 College Park
Scottsbluff, NE 69361

**RE:** ***Aurora Loan No.:*** *0021855259*
***Property Address:*** *4764 Carnegie Lane, Brentwood, CA 94513*
***Borrower: Christopher and Joleen Ironside***

Dear Sir or Madam:

By this official notice, Christopher and Joleen Ironside inform you of their election to rescind the above-referenced loan.

On July 24, 2006, Mr. and Mrs. Ironside entered into the above-referenced loan transaction. In violation of the Truth In Lending Act, the Truth in Lending Disclosure Statement provided to our clients failed to adequately inform our clients that their loan contained a negative amortization feature. This fraudulent activity is easily determined by a review of the file. A true and correct copy of the defective Truth In Lending Disclosure Statement is attached hereto as Exhibit "A".

For this reason, our clients' right to cancel extends for three years. *See* 15 U.S.C. 1635(f); *Semar v. Platte Valley Federal Savings & Loan Association* (9th Cir. 1986) 791 F.2d 699. Therefore, Mr. and Mrs. Ironside hereby exercise their rescission rights pursuant to the Federal Truth in Lending Act, Regulation Z §226.23. Therefore, this notice is timely given.

In addition, our clients reserve their right to raise different or alternative grounds for rescission under state or federal law.

# STEPHEN P. COLLETTE & ASSOCIATES
### LAW FIRM

Please contact me to make arrangements to fulfill your tender obligations.

Sincerely,

*Stph P. Cllett*

Stephen P. Collette

SPC/TLG

enclosure.

# EXHIBIT "F"
# TO RJN

1  Stephen P. Collette (SB# 186439)
   John Haubrich, Jr. (SB# 228341)
2  STEPHEN P. COLLETTE & ASSOCIATES
   14111 Freeway Dr., Suite 300
3  Santa Fe Springs, California 90670
   Telephone:  (562) 407-9325
4  Facsimile: (562) 684-4531

5

   Attorneys for Plaintiff
6  IRMA ACOSTA

ORIGINAL FILED

SEP 0 5 2008

LOS ANGELES
SUPERIOR COURT

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8               FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| 9  IRMA ACOSTA, an individual,    )<br>10           Plaintiff,     )<br>11         vs.            )<br>12  COUNTRYWIDE HOME LOANS, INC., d/b/a<br>   AMERICA'S WHOLESALE LENDER, a New<br>13  York Corporation; COUNTRYWIDE<br>   FINANCIAL CORPORATION d/b/a<br>14  RECONTRUST COMPANY, N.A., a<br>   Delaware Corporation; and DOES 1 through<br>15  50, inclusive,<br>16         Defendants. | CASE NO.:   KC053781 GH<br><br>**COMPLAINT FOR:**<br><br>**(1) RESCISSION PURSUANT TO THE FEDERAL TRUTH IN LENDING ACT [15 U.S.C. § 1601 AND REGULATION Z, 12 C.F.R. §226]; AND,**<br><br>**(2) PERMANENT INJUNCTION**<br><br>ASSIGNED FOR ALL PURPOSES TO JUDGE STEVEN D. BLADES DEPT. G |

19    Plaintiff IRMA ACOSTA (hereinafter "Plaintiff") alleges as follows:

20  **I.    PARTIES**

21     1.  Plaintiff IRMA ACOSTA (hereinafter "Plaintiff") is, and at all times relevant hereto

22  was, an individual residing in Los Angeles County in the State of California.

23     2.  Plaintiff is informed and believes, and on that basis alleges, that Defendant

24  COUNTRYWIDE HOME LOANS, INC., (hereinafter "Countrywide") is, and at all times

25  relevant hereto was, a Corporation organized and existing under the laws of the State of New

1

COMPLAINT FOR RECISSION AND PERMANENT INJUNCTION

1  York and which does business in the State of California. Plaintiff is further informed and

2  believes that COUNTRYWIDE HOME LOANS, INC. does business under the name of

3  AMERICA'S WHOLESALE LENDER (hereinafter "America's Wholesale Lender").

4      3.  Plaintiff is informed and believes, and on that basis alleges, that Defendant

5  COUNTRYWIDE FINANCIAL CORPORATION is, and at all times relevant hereto was, a

6  Corporation organized and existing under the laws of the State of Delaware and licensed to do

7  business in the State of California. Plaintiff is further informed and believes that

8  COUNTRYWIDE FINANCIAL CORPORATION does business under the name of

9  RECONTRUST COMPANY, N.A (hereinafter "Reconstrust Company").

10      4.  Plaintiff is ignorant of the true names and capacities of the defendants sued herein as

11  Does 1-50, inclusive, and therefore sue these defendants by these fictitious names. Plaintiff will

12  amend this Complaint to state the true names and capacities of these Doe defendants once

13  ascertained. Plaintiff is informed and believes, and on that basis allege, that each of the

14  fictitiously named defendants is in some manner responsible for the occurrences herein alleged,

15  and that Plaintiff's damages as herein alleged were proximately caused by said Doe defendants'

16  conduct.

17  **II.**       **BACKGROUND FACTS**

18      5.  In or about February, 2007, Plaintiff Acosta was living in her principal residence at

19  1336 South Fleetwell Avenue, West Covina, CA 91791. In order to lower her monthly

20  payments, Ms. Acosta decided to refinance the mortgage on her principal residence. Ms.

21  Acosta's lender on the refinance was Defendant Countrywide.

22      6.  When Ms. Acosta executed her loan documents on March 5, 2007, she was given two

23  copies of a Notice of Right to Cancel as required by the Federal Truth In Lending Act, 15 U.S.C.

24  § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226 *et seq.*  The right to cancel given to Ms.

25  Acosta was improper because it failed to specify the date of the transaction and the final date on

2
which she could cancel the transaction. A true and correct copy of the blank Notice of Right to
**COMPLAINT FOR RECISSION AND PERMANENT INJUNCTION**

1   Cancel given to Ms. Acosta is attached hereto as Exhibit "A" and incorporated herein by

2   reference.  Plaintiff is informed and believes, and on that basis alleges, that it was the custom and

3   practice of Defendant Countrywide to deliver blank notices to borrowers to reduce the chance

4   that the borrower would cancel the transaction.

5        7.  In July, 2007, Plaintiff Acosta began to have problems making her mortgage

6   payments.  Consequently, Ms. Acosta received a notice of default regarding the subject property.

7   Later, Ms. Acosta received a Notice of Trustee's Sale from Defendant Recontrust setting the

8   property for sale on September 11, 2008 at the Los Angeles County Courthouse located at 12720

9   Norwalk Blvd., Norwalk, CA.  Plaintiff intends to seek a preliminary injunction to enjoin the

10   sale of the property during the duration of this action for recession.

11        8.  Plaintiff sent notice to Defendant Countrywide that she intended to rescind the loan

12   on September 5, 2008 pursuant to the Federal Truth in Lending Act.

13        9.  Plaintiff now brings this action to rescind this loan pursuant to her rights under the

14   Federal Truth in Lending Act.

15   **III.   CLAIMS**

16   **FIRST CAUSE OF ACTION**

17   **(Rescission – By Plaintiff Against Defendant Countrywide)**

18        10. Plaintiff realleges and incorporates each allegation of paragraphs 1 through 10 above,

19   as though fully set forth herein.

20        11. This consumer credit transaction was subject to the Plaintiff's right of rescission as

21   described by 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23).

22        12. In the course of this consumer credit transaction, Defendant violated 15 U.S.C. §

23   1635(a) and Regulation Z § 226.23(b) by failing to deliver two copies of a notice of the right to

24   rescind that:  (a)  Identified the transaction; (b) Clearly and conspicuously disclosed the security

25   interest in the Plaintiff's home; (c) Clearly and conspicuously disclosed the Plaintiffs' right to

rescind the transaction; (d) Clearly and conspicuously disclosed how to exercise the right to

**COMPLAINT FOR RECISSION AND PERMANENT INJUNCTION**

1    rescind the transaction, with a form for that purpose, designating the address of the Defendant

2    ResMAE place of business; (e) Clearly and conspicuously disclosed the effects of rescission;

3    and, (f) Clearly and conspicuously disclosed the date the rescission period expired.

4         13. The disclosure statement issued in conjunction with this consumer credit transaction

5    violated the requirements of Truth in Lending and Regulation Z because the Notice of Right to

6    Cancel failed to clearly and conspicuously disclose the date the rescission period expired.

7         14. By reason of the aforesaid violations of the Truth in Lending Act and Regulation Z,

8    Plaintiff is entitled to rescind the consumer credit transaction and receive a tender of amounts

9    paid pursuant to the consumer credit transactions as damages. Plaintiff will, if necessary, amend

10   this Complaint to allege the exact amount of said damages once ascertained.

                        **SECOND CAUSE OF ACTION**

11

12                **(Preliminary/Permanent Injunction – by Plaintiff Against**

13                          **ALL Defendants)**

14        15. Plaintiff realleges and incorporates each allegation of paragraphs 1 through 14 above,

15   as though fully set forth herein.

16        16. Recently, Ms. Acosta received a notice of default regarding the subject property.

17   Later, Ms. Acosta received a Notice of Trustee's Sale from Defendant Recontrust setting the

18   property for sale on September 11, 2008 at the Santa Ana County Courthouse.

19        17. By this request for preliminary/permanent injunction, Plaintiff seeks to enjoin

20   Defendants from selling Plaintiff's real property located at 12720 Norwalk Blvd., Norwalk, CA.

21        18. Unless and until Defendants are enjoined and restrained by Order of this Court,

22   Plaintiff will suffer unique and irreparable damages in that his family home will be sold and he

23   will be unable to proceed with his action to rescind the loan on his property located at 12720

24   Norwalk Blvd., Norwalk, CA. Given the foregoing, Plaintiff has no adequate remedy at law and

25

     4

     **COMPLAINT FOR RECISSION AND PERMANENT INJUNCTION**

1   it is impossible for Plaintiff to determine the precise amount and nature of his injuries. The

2   requested injunctive relief is therefore appropriate and warranted.

3

4   **IV.    PRAYER FOR RELIEF**

5          WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them (to the

6   extent applicable), as follows:

7          1.        For rescission of the consumer credit transaction;

8          2.        For general damages in accordance with proof at trial;

9          3.        For special damages in accordance with proof at trial;

10         4.        For attorney's fees pursuant to the 15 U.S.C. § 1640; or as allowed by law and/or

11                   contract;

12         5.        For statutory damages based on Defendants' disclosure violations;

13         6.        For statutory damages based on Defendants' failure to respond properly to

14                   Plaintiff's recession notice;

15         7.        For a permanent injunction prohibiting Defendants from moving forward with a

16                   Trustee's sale on Plaintiff's property located at 7817 Poinsettia Drive, Buena

17                   Park, CA 90620;

18         8.        For costs of suit herein incurred; and,

19         9.        For such other and further relief as the Court may deem proper.

20

21                                          Respectfully submitted,

21  DATED:  September 5, 2008              STEPHEN P. COLLETTE & ASSOCIATES

22

23

24                                          By: _____
                                            STEPHEN P. COLLETTE
25                                          Attorneys for Plaintiff IRMA ACOSTA

5

**COMPLAINT FOR RECISSION AND PERMANENT INJUNCTION**

# EXHIBIT A

## NOTICE OF RIGHT TO CANCEL

**RESCISSION-DIFFERENT LENDER**
**REFINANCE**
AMERICA'S WHOLESALE LENDER

Prepared by: LEONOR YORO

DATE:          03/05/2007
BORROWER: IRMA ACOSTA
CASE #:
LOAN #:   163400072
PROPERTY ADDRESS: 1336 SOUTH FLEETWELL AVENUE
                 WEST COVINA, CA 91791-3807

Branch #: 0000918
55 SOUTH LAKE AVENUE #150
PASADENA, CA 91101
Phone: (626)431-2555
Br Fax No.: (877)585-3376

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

    (1)   The date of the transaction, which is _____ ; or
    (2)   The date you received your Truth in Lending disclosures; or
    (3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

AMERICA'S WHOLESALE LENDER
55 SOUTH LAKE AVENUE #150
PASADENA, CA 91101

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____        _____
SIGNATURE                                                DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____  _____   _____  _____
BORROWER/OWNER                     DATE       BORROWER/OWNER                     DATE
IRMA ACOSTA                                   JOSE ACOSTA

_____  _____   _____  _____
BORROWER/OWNER                     DATE       BORROWER/OWNER                     DATE

-44 (0010) 00        CHL (04/03)(d)        VMP MORTGAGE FORMS - (800)521-7291        10/00

* 2 3 9 9 1 *                          * 1 6 3 4 0 0 0 7 2 0 0 0 0 0 2 0 5 4 - *

# EXHIBIT "G"
# TO RJN

1  Stephen P. Collette (SB# 186439)
2  John Haubrich, Jr. (SB# 228341)
   STEPHEN P. COLLETTE & ASSOCIATES
3  14111 Freeway Dr., Suite 300
   Santa Fe Springs, California 90670
4  Telephone:  (562) 407-9325
   Facsimile: (562) 684-4531
5
   Attorneys for Plaintiffs
6  JAMES GREENSPAN and DEANNA GREENSPAN

COPY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles County Superior Court

AUG 0 8 2008

John A. Clarke, Executive Officer/Clerk
BY_____, Deputy
     DONALD EISMAN

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    FOR THE COUNTY OF LOS ANGELES

9  JAMES GREENSPAN, an individual,        )   CASE NO.: PC043134
10 DEANNA GREENSPAN, an individual,       )
                                          )   [Assigned for all purposes to the
11              Plaintiffs,               )   Honorable Robert Dukes, Dept. R]
                                          )
12        vs.                             )   FIRST AMENDED COMPLAINT
                                          )   FOR:
13 NATIONSFIRST LENDING, INC., a          )
14 California Corporation; COUNTRYWIDE    )   (1) RESCISSION PURSUANT TO
   DOCUMENT CUSTODY SERVICES, A           )       THE FEDERAL TRUTH IN
15 DIVISION OF TREASURY BANK, N.A., a     )       LENDING ACT [15 U.S.C. § 1601
   California Corporation; COUNTRYWIDE    )       AND REGULATION Z, 12 C.F.R.
16 HOME LOANS, INC., a California         )       §226]; AND,
   Corporation; and DOES 1 through 50,    )
17 inclusive,                             )   (2) UNLAWFUL AND UNFAIR
                                          )       BUSINESS PRACTICES [CAL
18              Defendants.               )       BUS. AND PROF. CODE §17200].

19                                            Trial Date: None

20

21        Plaintiff JAMES GREENSPAN and DEANNA GREENSPAN (hereinafter collectively

22 "Plaintiffs") alleges as follows:

23 I.     PARTIES

24        1.    Plaintiff JAMES GREENSPAN (hereinafter "James Greenspan") is, and at all

25 times relevant hereto was, an individual residing in Los Angeles County in the State of

California.

                                      1
                       FIRST AMENDED COMPLAINT

2.      Plaintiff DEANNA GREENSPAN (hereinafter "Deanna Greenspan") is, and at all times relevant hereto was, an individual residing in Los Angeles County in the State of California.

3.      Plaintiffs are informed and believe, and on that basis allege, that Defendant NATIONSFIRST LENDING, INC. (hereinafter "Nations First") is, and at all times relevant hereto was, a Corporation organized and existing under the laws of the State of California.

4.      Plaintiffs are informed and believe, and on that basis allege, that Defendant COUNTRYWIDE DOCUMENT SERVICES, A DIVISION OF TREASURY BANK, N.A. (hereinafter "CDS") is, and at all times relevant hereto was, a Corporation organized and existing under the laws of the State of Delaware and licensed to do business in the State of California.

5.      Plaintiffs are informed and believe, and on that basis allege, that Defendant COUNTRYWIDE HOME LOANS, INC. (hereinafter "Countrywide") is, and at all times relevant hereto was, a Corporation organized and existing under the laws of the State of New York and licensed to do business in the State of California.

6.      Plaintiffs are ignorant of the true names and capacities of the defendants sued herein as Does 1-50, inclusive, and therefore sue these defendants by these fictitious names. Plaintiffs will amend this Complaint to state the true names and capacities of these Doe defendants once ascertained.  Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named defendants is in some manner responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by said Doe defendants' conduct.

II.     **BACKGROUND FACTS**

9.      In or about June, 2005, Plaintiffs James and Deanna Greenspan were living in Northridge, California in a home they had owned for more than twenty years.  James Greenspan was employed at a local movie production studio.  His wife, Deanna Greenspan, was working as a teachers aid.  However, due to a period of slow employment at the movie studio, the

2

1   Greenspans had begun encountering financial difficulties.  By June, 2005, the Greenspan's credit

2   card debt had reached almost $23,000.00.

3          10.    The Greenspans had two mortgages on their house:  A First Trust Deed in the

4   amount of $320,088.05 with IndyMac Bank and a Second Trust Deed in the amount of

5   $44,911.54 with Countrywide Home Loans.  Thus, the total indebtedness on their home was

6   approximately $366,099.59.  However, due to the surging housing market, the Greenspans still

7   had considerable equity in their home.  With ready equity and significant financial pressure, the

8   Greenspans were the perfect victim for a predatory lender.

9          11.    In May 2005, James Greenspan saw an advertisement from Defendant Nations

10  First.  According to the advertisement, Plaintiffs could lower their monthly payments while

11  getting cash from available equity at the same time.  When Mr. Greenspan responded to the

12  advertisement, he was told that he was eligible to receive a mortgage with an interest rate of just

13  one percent.  The Greenspans believed that this low interest loan was the answer to their

14  financial problems, but instead it was the beginning of a financial nightmare that may ultimately

15  result in the loss of their family home.

16         12.    The Greenspans signed their loan documents on June 29, 2005.  The note

17  provided the promised a one percent interest rate, but, unbeknownst to the Greenspans, this rate

18  was good for only one month.  Pursuant to the note, the interest rate adjusted to 2.95% over the

19  United States Treasury index on August 1, 2005.  Thus, the one percent rate was almost entirely

20  illusory.  Plaintiffs are informed and believe, and on that basis allege, that the sole purpose of

21  Defendants in offering and advertising the one percent rate was to create a false impression in the

22  minds of the Greenspans and other borrowers regarding the true cost of the loan.

23         13.    To further confuse the borrowers, and to further conceal the true cost of the loan,

24  the note provides that the initial monthly payment of $1,302.64 will remain consistent for an

25  additional year until August 1, 2006. The difference between the payments being made in the

first year and the interest rate (which adjusted after one month) meant that the principal amount

3

**FIRST AMENDED COMPLAINT**

1  of the loan continues to increase. Like many borrowers, the Greenspans were unaware of this

2  fact and they were surprised when their principal balance kept increasing.

3       14.     When the Greenspans executed their loan documents, they were given two copies

4  of a Notice of Right to Cancel as required by the Federal Truth In Lending Act, 15 U.S.C. § 1601

5  *et seq.*, and Regulation Z, 12 C.F.R. § 226 *et seq.* However, the right to cancel given to the

6  Greenspans was improper because it failed to specify the final date on which they could cancel

7  the transaction. Plaintiffs are informed and believe, and on that basis allege that it was the

8  custom and practice of Defendant First Nations to deliver blank notices to borrowers to reduce

9  the chance that the borrower would cancel the transaction.

10       15.     When the loan closed, the Greenspans paid approximately $23,000.00 in credit

11  card debt and received an additional $8,000.00 in cash. Their new loan balance was

12  $405,000.00. The loan was immediately transferred, sold and/or assigned to Defendants CDS

13  and Countrywide.

14       16.     Initially, the Greenspans made their regular payments unaware that their loan

15  would eventually lead them to disaster. However, by early 2007, the Greenspans had become

16  aware that the principal balance of their loan was increasing each month. They also became

17  aware that their mortgage payments would increase dramatically once that principal balance

18  increased to 115% of the original loan amount. In order to avoid this problem, the Greenspans

19  were forced to refinance into a new loan. By the time the Greenspan's refinanced in February,

20  2007, their principal balance had increased to $422,375.10. In addition, the Greenspans were

21  forced to pay a prepayment penalty of $13,441.64. By the time the Greenspan's had paid these

22  penalties and the fees associated with their new loan, their principal balance had ballooned to

23  $442,110.50. The Greenspans are now struggling to service this date, and may face the loss of

24  their family home.

25       17.     On June 28, 2008, the Greenspans, by and through their counsel, sent a letter to

rescind the above-referenced loan via certified mail to each Defendant. A true and correct copy

4

**FIRST AMENDED COMPLAINT**

of this letter is attached hereto as Exhibit "A" with the confirmation of receipts.  Defendant

Nations First received a copy of Plaintiffs' Notice of Rescission on or about July 7, 2008.

Defendant CDS received a copy of Plaintiffs' Notice of Rescission on or about June 30, 2008.

Defendant Countrywide received a copy of Plaintiffs' Notice of Rescission on or about July 1,

2008.  More than 20 calendar days have passed since Defendants received copies of the

Plaintiffs' notice of rescission.  Defendants have failed to take any action necessary or

appropriate to reflect the termination of any security interest created under the transaction as

required by 15 U.S.C. § 1635(b) and Regulation Z §226.23(d)(2).

18.     Plaintiffs now brings this action to rescind this loan pursuant to their rights under

the Federal Truth in Lending Act and to address the misleading and unfair business practices of

Defendants.

## III.   CLAIMS

### FIRST CAUSE OF ACTION

### (Rescission – By Plaintiffs Against All Defendants)

19.     Plaintiffs reallege and incorporate each allegation of paragraphs 1 through 18

above, as though fully set forth herein.

20.     This consumer credit transaction was subject to the Plaintiffs' right of rescission

as described by 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23).

21.     In the course of this consumer credit transaction, Defendants violated 15 U.S.C. §

1635(a) and Regulation Z § 226.23(b) by failing to deliver two copies of a notice of the right to

rescind that:  (a)  Identified the transaction; (b) Clearly and conspicuously disclosed the security

interest in the Plaintiffs' home; (c) Clearly and conspicuously disclosed the Plaintiffs' right to

rescind the transaction; (d) Clearly and conspicuously disclosed how to exercise the right to

rescind the transaction, with a form for that purpose, designating the address of the Defendant

Creditor's place of business; (e) Clearly and conspicuously disclosed the effects of rescission;

and, (f) Clearly and conspicuously disclosed the date the rescission period expired.

1      22.    The disclosure statement issued in conjunction with this consumer credit

2 transaction violated the requirements of Truth in Lending and Regulation Z because the Notice

3 of Right to Cancel failed to clearly and conspicuously disclose the date the rescission period

4 expired.

5      23.    Plaintiffs sent all Defendants a notice of rescission on June 28, 2008.  Defendants

6 have failed to take any action necessary or appropriate to reflect the termination of any security

7 interest created under the transaction as required by 15 U.S.C. § 1635(b) and Regulation Z

8 §226.23(d)(2).

9      24.    By reason of the aforesaid violations of the Truth in Lending Act and Regulation

10 Z, Plaintiffs are entitled to rescind the consumer credit transaction and receive a tender of

11 amounts paid pursuant to the consumer credit transactions as damages.  Plaintiffs will, if

12 necessary, amend this Complaint to allege the exact amount of said damages once ascertained.

13 **SECOND CAUSE OF ACTION**

14 **(Unlawful And Unfair Business Practices In Violation Of**

15 **Cal Bus. And Prof. Code § 17200 – By Plaintiffs Against All Defendants)**

16      25.    Plaintiffs reallege and incorporate each allegation of paragraphs 1 through 24

17 above, as though fully set forth herein.

18      26.    Defendant First Nations advertised its loans as one percent interest loans with the

19 intent to mislead the Greenspans and other consumers.  Defendants CDS and Countrywide, were

20 aware that the loans which they were purchasing contained a misleading clause designed to

21 mislead Greenspan and other consumers, and that Defendant First Nations was misleading such

22 consumers.

23      27.    Therefore, by the fraudulent, deceptive, unfair, and other wrongful conduct as

24 herein alleged, said Defendants have violated California Business and Professions Code § 17200

25 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to

deprive Plaintiffs of money and/or property.

6

28.     Plaintiffs have suffered injury and damages and have lost income and/or property as a result of Defendants' unfair and unlawful practices in violation of California Business & Professions Code § 17200.

29.     As a proximate result of Defendants violation of the aforementioned statute, Plaintiffs have suffered general and special damages in an amount in excess of the jurisdictional limit of this Court.  Plaintiffs will, if necessary, amend this Complaint to allege the exact amount of said damages once ascertained.

IV.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them (to the extent applicable), as follows:

1.     For rescission of the consumer credit transaction;

2.     For general damages in accordance with proof at trial;

3.     For special damages in accordance with proof at trial;

4.     For attorney's fees pursuant to the 15 U.S.C. § 1640; or as allowed by law and/or contract;

5.     For statutory damages based on Defendants' disclosure violations;

6.     For statutory damages based on Defendants' failure to respond properly to Plaintiffs' recession notice;

7.     For costs of suit herein incurred; and,

8.     For such other and further relief as the Court may deem proper.

Respectfully submitted,

DATED: August 6, 2008                STEPHEN P. COLLETTE & ASSOCIATES

By: _____
STEPHEN P. COLLETTE
Attorneys for Plaintiff JAMES
GREENSPAN and DEANNA
GREENSPAN

7

# EXHIBIT

# "A"

**STEPHEN P. COLLETTE & ASSOCIATES**
14111 Freeway Drive, Suite 300
Santa Fe Springs, California 90670
Telephone: (562) 407-9325
Facsimile: (562) 684-4531

June 28, 2008

**VIA CERTIFIED MAIL**
Nations First Lending, Inc.
20 Corporate Park, Suite 300
Irvine, California 92606

Countrywide Document Custody Services
A Division of Treasury Bank, N.A.
1800 Tapo Canyon Rd.
Simi Valley, CA 93063

Countrywide Home Loans, Inc.
400 Countrywide Way
Simi Valley, California 93065

Re:  Rescission of Loan Number 0001013042
     James and Deanna Greenspan
     10818 Baird Avenue
     Northridge, California 91326

Dear Sir or Madam:

By this official notice, James and Deanna Greenspan are informing you of their election to rescind the loan referenced above.

On June 29, 2005, the Greenspan's entered into the above-referenced loan transaction. Although their Notice Of Right To Cancel specified the date of the transaction, it failed to specify the last day to cancel the transaction. (True and correct copies of the defective Notice Of Right To Cancel for both James and Deanna Greenspan are attached hereto as Exhibit "A").

For this reason, the Greenspan's right to cancel extends for three years until June 29, 2008. *See* 15 U.S.C. 1635(f); *Semar v. Platte Valley Federal Savings & Loan Association* (9th Cir. 1986) 791 F.2d 699. Therefore, the Greenspan's hereby exercise their rescission rights pursuant to the Federal Truth in Lending Act, Regulation Z 226.23. Therefore, this notice is timely given.

1

In addition, my clients reserve their right to raise different, or alternative grounds for rescission under state or federal law.

Please contact me to make arrangements to fulfill your tender obligations.

Sincerely,

*[signature]*

Stephen P. Collette

2

# NOTICE OF RIGHT TO CANCEL

Loan Number: 0001013042

Borrowers: JAMES GREENSPAN, DEANNA GREENSPAN

Property Address: 10818 BAIRD AVENUE, NORTHRIDGE AREA, CALIFORNIA 91326

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is JUNE 29, 2005 ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at
NATIONS FIRST LENDING, INC.
20 CORPORATE PARK, SUITE 300
IRVINE, CALIFORNIA 92606

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL.

Consumer's Signature                               Date
DEANNA GREENSPAN

## ACKNOWLEDGMENT OF RECEIPT

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

DEANNA GREENSPAN                               Date

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)
05/06/05

DocMagic *800-649-1367*
*www.docmagic.com*

# NOTICE OF RIGHT TO CANCEL

Loan Number: 0001013042

Borrowers: JAMES GREENSPAN, DEANNA GREENSPAN

Property Address: 10818 BAIRD AVENUE, NORTHRIDGE AREA, CALIFORNIA 91326

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is  JUNE 29, 2005                ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
NATIONS FIRST LENDING, INC.
20 CORPORATE PARK, SUITE 300
IRVINE, CALIFORNIA 92606

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____          _____
Consumer's Signature                          Date
JAMES GREENSPAN

**ACKNOWLEDGMENT OF RECEIPT**

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

_____          _____
JAMES GREENSPAN                              Date

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)
05/06/05

DocMagic €Reuser 800-649-1362
www.docmagic.com

# NOTICE OF RIGHT TO CANCEL

Loan Number: 0001013042

Borrowers: JAMES GREENSPAN, DEANNA GREENSPAN

Property Address: 10818 BAIRD AVENUE, NORTHRIDGE AREA, CALIFORNIA 91326

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is  JUNE 29, 2005            ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
NATIONS FIRST LENDING, INC.
20 CORPORATE PARK, SUITE 300
IRVINE, CALIFORNIA 92606

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____      _____
Consumer's Signature                 Date
JAMES GREENSPAN

**ACKNOWLEDGMENT OF RECEIPT**

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

_____      _____
JAMES GREENSPAN                       Date

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)
05/06/05

DocMagic *Ecrosus* 800-649-1362
www.docmagic.com

# NOTICE OF RIGHT TO CANCEL

Loan Number: 0001013042

Borrowers: JAMES GREENSPAN, DEANNA GREENSPAN

Property Address: 10818 BAIRD AVENUE, NORTHRIDGE AREA, CALIFORNIA 91326

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is   JUNE 29, 2005          ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
NATIONS FIRST LENDING, INC.
20 CORPORATE PARK, SUITE 300
IRVINE, CALIFORNIA 92606

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL.

_____          _____
Consumer's Signature                 Date
DEANNA GREENSPAN

**ACKNOWLEDGMENT OF RECEIPT**

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

_____          _____
DEANNA GREENSPAN                     Date

http://trkcnfrm1.sm    s.com/PTSInternetWeb/InterLabelDetail.do


**UNITED STATES**
**POSTAL SERVICE**®

Home | Help | Sign In

Track & Confirm                    FAQs

## Track & Confirm

### Search Results

Label/Receipt Number: 7007 2560 0002 8493 7019
Detailed Results:

- **Delivered, June 30, 2008, 9:14 am, SIMI VALLEY, CA 93063**
- Arrival at Unit, June 30, 2008, 7:46 am, SIMI VALLEY, CA 93063
- Acceptance, June 28, 2008, 11:34 am, LA MIRADA, CA 90638

< Back                    < Return to USPS.com Home >

**Track & Confirm**

Enter Label/Receipt Number.

Go >

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   Go >

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

Postage $        $1.00        0050

Certified Fee        $2.70        10

Return Receipt Fee
(Endorsement Required)        $0.00        Postmark Here

Restricted Delivery Fee
(Endorsement Required)        $0.00

Total Postage & Fees $        $3.70        06/28/2008

Sent To
Countrywide Document Group Services
Street, Apt. No.;
or PO Box No.  1800 Tapo Canyon Rd
City, State, ZIP+4  Simi Valley CA 93065

7007 2560 0002 8493 7019

of 1

**UNITED STATES**
**POSTAL SERVICE**®

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7007 2560 0002 8493 7002
Detailed Results:

- **Delivered, July 01, 2008, 8:47 am, SIMI VALLEY, CA 93065**
- Arrival at Unit, July 01, 2008, 7:48 am, SIMI VALLEY, CA 93063
- Acceptance, June 28, 2008, 11:32 am, LA MIRADA, CA 90638

⟨ Back              Return to USPS.com Home ⟩

**Track & Confirm**

Enter Label/Receipt Number.

Go ›

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   Go ›

---

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA





## UNITED STATES
## POSTAL SERVICE®

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7007 2560 0002 8493 6982
Detailed Results:

- **Delivered, July 07, 2008, 11:53 am, SANTA FE SPRINGS, CA 90670**
- **Acceptance, June 28, 2008, 11:34 am, LA MIRADA, CA 90638**

‹ Back               Return to USPS.com Home ›               Go ›

**Track & Confirm**

Enter Label/Receipt Number.

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.    Go ›

---

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Stephen P. Collette (SB 186349) Stephen P. Collette & Associates<br>14241 E. Firestone Blvd., Ste 400<br>La Mirada, CA 90638 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: 562-293-4086    FAX NO.: 562-684-4531<br>ATTORNEY FOR *(Name):*  Plaintiff | CONFORMED COPY<br>OF ORIGINAL FILED<br>Los Angeles County Superior Court |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS:  North Valley District
MAILING ADDRESS:  9425 Penfield Avenue
CITY AND ZIP CODE:  Chatsworth, CA 91311
BRANCH NAME:  Chatsworth Courthouse

JUN 3 0 2008

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
O. Chaparyan

CASE NAME:
Nunez v. Montano

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:  P C 0 4 3 1 3 4 |
|---|---|---|---|---|
| ✔ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | | JUDGE:<br>DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
✔ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ✔ is not  complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties  d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel  e. ☐ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve  in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence  f. ☐ Substantial postjudgment judicial supervision
3. Type of remedies sought *(check all that apply):*
   a. ✔ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is  ✔ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  June 30, 2008

Stephen P. Collette                                                    ▶ _____
(TYPE OR PRINT NAME)                                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

1

**CERTIFICATE OF SERVICE**

2

     I, the undersigned, declare that I am over the page of 18 and am not a party to this action.

3
I am employed in the City of Irvine, California.  My business address is Severson & Werson,
19100 Von Karman Avenue, Suite 700, Irvine, California 92612.

4

     On the date below I served the within document(s) described as: **REQUEST FOR**

5
**JUDICIAL NOTICE IN SUPPORT OF  DEFENDANT AURORA BANK FSB'S
MOTION TO DISMISS**  on the interested parties in this action:

6

7  ☒  by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☒
addressed as follows: ☐ address as stated on the attached mailing list.

8

9
Tiffany L. Gray, Esq.               *Attorneys for Plaintiff Jessica Delaney*
STEPHEN P. COLLETTE &

10
ASSOCIATES
811 Wilshire Blvd., Ste. 1200

11
Los Angeles, CA 90017
Tel: (213) 542-8272

12
Fax: (562) 684-4531
Email: tgray@collettelegal.com

13  ☒  **BY MAIL** (C.C.P. § 1013(a)) - I deposited such envelope(s) for processing in the mail

14
room in our offices.  I am "readily familiar" with the firm's practice of collection and
processing correspondence for mailing.  It is deposited with the U.S. Postal Service on

15
that same day with postage thereon fully prepaid at Irvine, California, in the ordinary
course of business.  I am aware that on motion of a party served, service is presumed

16
invalid if postal cancellation date or postage meter date is more than one day after the date

17
of deposit for mailing in affidavit.

18  ☒  **(BY ELECTRONIC SERVICE)**  Pursuant to CM/ECF System, registration as a

19
CM/ECF user constitutes consent to electronic service through the Court's transmission
facilities.  The Court's CM/ECF system sends an e-mail notification of the filing to the

20
parties and counsel of record listed above who are registered with the Court's EC/ECF
system.

21  ☒  **FEDERAL** - I declare that I am employed in the office of a member of the bar of this

22
Court at whose direction the service was made.

23
Executed on October 2, 2009, at Irvine, California.

24

25
By: _____

26
            Lorraine Johnson

27

28

- 5 -